## WALDO BANK *vs.* JOSEPH R. LUMBERT & *al.*

If the name of a firm be affixed to a negotiable paper by one of the members of the firm for his individual accommodation, and the note is discounted at a bank in the usual manner, without knowledge of such fact, the other members of the firm are bound, although the note is made out of the course of the partnership business, and without the knowledge or consent of the other partners.

THIS case came before the Court upon a statement of facts agreed by the parties. It was agreed, that so much of the statement as was founded on the testimony of *French*, one of the drawers of the draft in suit, should be excluded, if the Court should deem it inadmissible on objection made by the plaintiffs. One of the defendants in his own name and in the name of the company, gave to *French* a release under seal, but no authority was shown from his partner to execute the release. The statement of facts in the opinion is sufficiently full to dispense with any additional statement.

*W. Kelley*, for the plaintiffs, contended, that it was sufficient to enable the plaintiffs to recover, that the defendants, being payees and indorsers, were bound to see that the bill was fair and proper. The plaintiffs took the bill on their responsibility, without the slightest cause of suspicion. If every name prior to the defendants' was a forgery, still they are bound. Although the bill may be fraudulent in the hands of the payee, still it may be good if it come into the hands of a *bona fide* holder in the ordinary transaction of business, as a discount. 2 *Stark. Ev.* 267 ; *Boardman* v. *Gore*, 15 *Mass. R.* 231. It is sufficient to charge both partners, if the bill be drawn by one in the name of the firm, and it be negotiated to a third person in the usual course of business, without knowledge by the holder of any want of authority. *Collyer on Part.* 220, 241, 279, 289, *and cases cited; Foster* v. *Andrews*, 2 *Penns. R.* 160. Without the testimony of *French*, there is no pretence of a defence. He could not be a witness without being released, being directly interested. *Pierce* v. *Butler*, 14 *Mass. R.* 303. One partner cannot bind another by a sealed instrument. *Crawford* v. *Millspaugh*, 13 *Johns. R.* 87 ; 7 *T. R.* 207.

*Rogers,* for the defendants, said, that in *Chazournes* v. *Edwards,* 3 *Pick.* 5, the Court, upon a review of the authorities, establish this doctrine, that where a note is given in the name of a firm, by one of the partners, for the private debt of such partner, and known to be so by the person taking the note, the other partners are not bound by such note unless they have been previously consulted and assented to the transaction. The same principle is recognized in many other cases. *Stearns* v. *Burnham,* 4 *Greenl.* 84; 1 *Wend.* 529; 3 *Wend.* 415; 6 *Wend.* 615; 7 *Wend.* 158; *ib.* 309; 11 *Wend.* 75; 14 *Wend.* 141, 146. He then contended that this was a transaction for the benefit of *Greely,* and a fraud upon his partner; that the draft in suit, which grew out of the transaction, was void; and that the Bank took it under such circumstances, as that they must be considered as having knowledge of the facts. If the party taking the paper can be considered as being advertised that it was not intended to be partnership property, it will not bind them. 8 *Ves.* 542. The principle upon which one partner may bind another is, that each is made the agent of the others for the purpose of entering into contracts for them within the scope of the partnership concern. 6 *Bing.* 776. If the facts afford a defence to the partner of *Greely,* they are equally available to the defendants as indorsers. 3 *Pick.* 5, before cited. The release of one of the defendants in the name of the company is valid. 3 *Johns. R.* 68; 13 *Johns. R.* 286; 14 *Johns. R.* 387.

The opinion of the Court was drawn up by

EMERY J. — The case stated exhibits the claim of the plaintiffs against the defendants as indorsers of a draft dated *September* 16, 1836, in their favor, by *French & Greely* on *David Greely,* merchant, *Bangor,* and by him accepted, for $1500, payable in four months after date, at the *Suffolk Bank, Boston.*

The presentment, protest and notices in due form are admitted.

The case has been elaborately and ingeniously argued. It is objected, if *French* be legally admissible as a witness, that *Greely* was not authorized to use or sign the name of the firm in any transactions disconnected with partnership transactions. That this, and the other drafts mentioned in the agreed statement of facts, were all made and discounted by *Greely* for his own transactions, and in

no way connected with the company of *French. & Greely*, and that no part of the proceeds of said drafts ever went to the benefit of the company.

The cashier says the above drafts were all received and discounted by the Bank in the regular course of business, and that he knew nothing of the relation of the parties to each other, nor the want of authority of any of the parties to sign the partnership name, or to bind their respective companies, and that there was no antecedent debt due from *Greely* to the Bank. That he did not know any thing about *David Greely*, nor that he was a member of the firm of *French & Greely*.

By said *French* it is further disclosed, that the house of *French & Greely* entered into partnership *October* 29, 1834, ceased doing business in *August*, 1836, and was dissolved in *December* following. The business of the firm, during its continuance, was large, and the amount of the transactions with the banks in the vicinity $100,000. *Greely* brought into the firm $2000 at first. That *French* had some suspicions that *Greely* was using the company name improperly the last of *July*, 1836, and had actual knowledge of the fact sometime in the following *August*; but gave no notice until *December*, when the partnership was dissolved. In *January*, 1836, *Greely* was absent several weeks at *New-York* or *Boston*, and again, nearly the whole month of *May* and into *June* following; again in *August*, and then again in *October* following.

Can the Court, from the facts stated, infer that the Bank had express or implied notice of the particulars of the connection between *French & Greely* ; or that *French* had no express or implied notice of *Greely's* proceedings with the *Waldo Bank?* The tendency of the facts stated, is stronger to show that *Mr. French* had notice enough to put him upon inquiry in *July*, and actual knowledge in *August.* And there is wanting a satisfactory explanation how the renewals in *May*, with the $500, was procured, if *Greely* was absent during that month and into *June* following.

We are not satisfied, that the circumstance of the application being by *Greely* should be implied notice to the Bank. Express notice is not pretended, but absolutely denied.

Occasion is often given to lament the liability to which partners are unexpectedly subjected. In proper cases, the Court uniformly

endeavor to apply the legal limitation of responsibility. But in this case, the defendants engaged conditionally to meet the demand of the plaintiffs, if the acceptor did not, provided the requisite steps were taken to charge them as indorsers. These preliminary courses are admitted to have been regularly pursued.

In this suit, it is immaterial whether *French* received notice.

The case cited by the defendant's counsel from 1 *Wend.* 529, *Laverty & al.* v. *Burr & al.* where the partners who did not sign the indorsement were held not to be bound, was a case in which the note was indorsed by one of the members of the firm, as security for a third person, and the person to whom the note was passed *knew the facts.* Afterward a decision was made in *New-York*, reported in 15 *Wend.* 364, *Catskill Bank* v. *Stall*, that if for the accommodation of a third person, the name of a firm be affixed to negotiable paper, by one of the members of the firm, and the note is discounted by a bank, without knowledge of such fact, the other members of the firm are bound, although the note is given out of the course of the partnership business, and without their knowledge or consent.

It becomes unnecessary to examine particularly as to the admissibility of *French* as a witness, though the inclination of our opinion is against it, because, whether in or out of the case, we do not perceive a legal defence for the defendants in this action. According to the agreement of the parties, the defendants must be defaulted.