PARK, BROTHER & CO., LIMITED, v. A. J. HARWI.
No. 67.

LIMITED PARTNERSHIP, *Contract by—Invalidity.* Persons doing business as a limited partnership under the laws of the state of Pennsylvania cannot maintain an action to recover damages for the breach of a contract entered into for the purchase from them of certain goods of their manufacture, when the laws under which they were organized expressly prohibit them from contracting such liability in the manner attempted by the contract sued upon.

MEMORANDUM.—Error from Atchison district court ; ROBERT M. EATON, judge.   Action by Park, Brother

& Co., Limited, against A. J. Harwi to recover damages for breach of a contract. Judgment for defendant. Plaintiffs bring the case here. Affirmed. The material facts are stated in the opinion, filed December 5, 1895.

*L. F. Bird*, and *A. F. Smith*, for plaintiffs in error.
*W. W. & W. F. Guthrie*, for defendant in error.

The opinion of the court was delivered by

GARVER, J.: Park, Brother & Co., organized as a limited partnership under the laws of Pennsylvania, were engaged in the manufacture and sale of steel. On December 9, 1887, a selling agent of this company solicited orders from A. J. Harwi, who was engaged in the hardware business in the city of Atchison, and submitted to him a written proposition, the material parts of which, so far as concerns the questions in this case, are as follows:

"DECEMBER 9, 1887.

"*A. J. Harwi, Atchison, Kan.:* DEAR SIR—We propose to supply you with five net tons of black diamond tool steel, of good and suitable quality, to be furnished prior to July 1, 1888, at 8½-cent rates. Shipments from St. Louis store less 5 per cent. commission. Terms: Four months; or 3 per cent. off for cash, 30 days. Pgh. shipments, deliveries to be made F. O. B. Pittsburg, with freight allowance to St. Louis, Mo. To be specified for as follows: Prior to July 1, 1888.
. . .    Yours truly,
[Signed] PARK, BROTHER & Co., Limited.
R. B. LYLE.
Accepted: [Signed] "A. J. HARWI."

Subsequently to the acceptance of said proposition, Harwi ordered and received steel of the kind named to the amount of 1,986 pounds, and refused to order or receive more than that, on the ground that the de-

mands of his business did not require it, and claiming that it was understood at the time the proposition was made and accepted that only so much of the five tons should be ordered as was needed by him.   Because of such refusal this action was commenced, April 19, 1889, to recover damages alleged to have been sustained because of the refusal on the part of Harwi to take steel to the extent of the five tons.   On the trial, the court admitted evidence to show, and the jury found, that the selling agent of the plaintiff company and Harwi entered into an oral agreement to the effect that Harwi, at the prices named in the written proposition, should order of the plaintiffs and take such steel as he might need in his business; and that the written proposition was signed by Harwi because of the representations of the selling agent that there was a combination among the manufacturers of tool steel, and that the plaintiffs, as members of such combination, were not allowed to sell steel at the prices offered to the defendant in less quantities than five tons, and that they desired the written proposition of prices for the five tons for no other purpose than that they might have it, if necessary, for use with the combination to justify a sale at the prices given to the defendant.   It was admitted upon the trial that the plaintiffs were a limited partnership organized under the laws of Pennsylvania, and that such laws, as they affected the capacity of plaintiffs to contract, contain this provision :

''No debt shall be contracted or liability incurred for such association, except by one or more of such managers; and no liability for an amount exceeding $500, except against the party incurring it, shall bind the said association, unless reduced to writing and signed by at least two managers.''

Under the instructions of the court, the jury found

that the actual contract between the plaintiffs and the defendant did not require the defendant to order or accept a greater quantity of steel than he had actually received and paid for ; and that there was, consequently, no violation or breach of the contract on his part.    On this finding, the court rendered judgment against the plaintiffs for costs.

We think the judgment must be affirmed, even conceding that the contract made by the selling agent was as claimed by the plaintiffs in this action.    The demurrer interposed by the defendant to the plaintiffs' evidence raised the question of the right of the plaintiffs to base any right of recovery upon this alleged contract.    The evidence shows that the contract created a liability for an amount exceeding $500 ; that it was not signed by any one who was a manager of the company, and, consequently, that it was such a contract as the act under which the plaintiffs were organized prohibits the company from entering into in · the manner attempted in this case.    This statute has been construed by the supreme court of Pennsylvania to apply to contracts of this character, and to protect such a limited partnership from liability attempted to be thus created by agents of the company, unless the contract be signed by at least two of its managers. (*Melting Co. v. Reese*, 118 Pa. St. 355, 362.)    That was a case where it was sought to enforce the specific performance by the company of a contract for the sale of more than $500 worth of its manufactured goods.    The court held that the action could not be maintained against the company because of the invalidity of the contract, it not being signed by two managers of the company.    In the opinion the statute is construed as follows :

"The term 'liability' expresses in the broadest and

most comprehensive manner any form of legal obligation, certainly all such as are measured by money values.   A purchase for more than $500 would undoubtedly be a liability prohibited:   Why not a sale? The purchase imposes an obligation to receive a commodity and pay for it, and if this obligation is not discharged by performance, a liability to pay damages for its breach ensues.   A sale imposes an obligation to deliver a commodity and receive money for it, and if not discharged a liability to respond in damages for its breach results.   We can see no essential difference between these two different species of liabilities, in construing a legislative enactment such as this, the manifest purpose of which is to protect the association and its members from all obligations not sanctioned in the manner especially directed.''

The construction put upon this statute by the supreme court of that state will be followed in this case. (*Hamilton v. H. & St. J. Rld. Co.*, 39 Kan. 56.)  Mutuality of obligation is one of the requisites of every contract.   If the contract in question is such an one as the officers and agents of this company cannot make so as to bind the company unless sanctioned in the manner directed by the statute, it is difficult to see how they can rely upon it, so far as it is executory, as the basis of a claim against another party for its breach.   We are of opinion that the judgment entered in this case was authorized by the plaintiffs' own showing.

Should we further consider the merits of the case, we think parol evidence was admissible for the purpose of showing that the real contract between these parties was not reduced to writing ; that the writing offered in evidence was not intended to evidence the contract, and that the real purpose of the parties was that it should be used for an entirely different object. ( *Wire-Mill Co. v. Barb-Wire Co.*, 46 Kan. 773 ; *Schind-*

*ler v. Mulheiser,* 45 Conn. 153; *Grierson v. Mason,* 60 N. Y. 394.)

Various rulings of the court upon the admission of evidence are assigned for error, but under the view we take of the case they are unimportant and immaterial.

The judgment will be affirmed.

All the Judges concurring.